Submitted on briefs at Pendleton October 27, 1925, reversed January 5, 1926.

## BANKERS' DISCOUNT CORPORATION *v.* H. LEE NOE.

(242 Pac. 610.)

**Sheriffs and Constables—Answer Justifying Attaching Mortgaged Personalty Should Allege and Prove Every Step Leading Up to and Filing Certificate of Attachment.**

1. In action against sheriff for attaching mortgaged property, defendant's affirmative answer to substantiate superior right to hold property should allege and prove every step leading up to filing of certificate of attachment.

**Sheriffs and Constables—Answer Failing to Allege Kind of Action in Which Property was Attached, or Nature of Affidavit or Bond Filed, Held Insufficient to Justify Sheriff's Seizure of Mortgaged Property.**

2. In action, by mortgagee, against sheriff for seizure of mortgaged property under attachment, although allegation in answer as to beginning of action, in which attachment was issued sufficiently complied with Section 51, Or. L., in view of Sections 295, 296, as amended by Acts of 1921, page 101, relating to issue of attachment,

failure of answer to allege that summons was issued, or to state kind of action or nature of affidavit or bond filed, made it insufficient to justify attachment of such property.

**Attachment—Strict Compliance With Statutes Authorizing Attachment must be Pleaded and Proved to Justify Attachment.**

3.   Attachment traces its origin only to custom of London, and is not common-law remedy, and is subject to rule that strict compliance with statute authorizing it must be pleaded and proven to justify attachment.

**Chattel Mortgages—Attachment Held not to Divest Prior Lien of Chattel Mortgagee.**

4.   In view of Section 10183, Or. L., where personal property was subject to chattel mortgage antedating attachment, all that could be taken under attachment would be subject to mortgage on such property, and such attachment would not operate to divest prior lien of mortgage.

**Chattel Mortgages—Mortgage Recorded in County in Which Chattels were Situated Held Valid as to Them, Though not Recorded in Any Other County.**

5.   Under Sections 10177, 10178, Or. L., relating to recording of instruments intended to operate as mortgage of personal property, chattel mortgage recorded in county in which chattels were situated was valid as to them, though not recorded in any other county.

**Sheriffs and Constables—One Attaching Property Subject to Chattel Mortgage may not Defend on Ground That Another Chattel Mortgage was Given in Another County to Secure Same Debt.**

6.   Sheriff, sued for seizure under attachment of property subject to chattel mortgage, may not defend on ground that another chattel mortgage was given and recorded in another county, securing same debt, in view of fact that first mortgage was still of record and unsatisfied.

**Chattel Mortgages—Chattel Mortgage Held not to Affect Additional Property Situated in County in Which Subsequently Recorded.**

7.   Chattel mortgage applies only to property recovered by it, and does not affect additional property situated in another county in which it might be subsequently recorded.

**Sheriffs and Constables—Special Damages for Attachment of Mortgaged Property must be Pleaded to be Recoverable.**

8.   In action by chattel mortgagee against sheriff for attaching mortgaged property, damages for plaintiff's making trip and loss of

---

3.   See 2 R. C. L. 801.

5.   Registration of chattel mortgages, see note in 21 **Am. St. Rep.** 282.

8.   Damages for wrongful or malicious attachment, see note in 68 **Am. St. Rep.** 266.

Measure of damages recoverable for wrongful levy under writ of attachment, see note in **Ann. Cas.** 1915B, 1219.

timo, telephone and telegraph bills and premium for redelivery bond aro special damages, and, if recoverable at all, must be pleaded specially.

**Sheriffs and Constables—Court Held to have Duty to Direct Verdict for Chattel Mortgagee Suing Officer Who Attached Mortgaged Property.**

9. In action by chattel mortgagee against sheriff for attaching mortgaged property, where, on undisputed evidence, chattel mortgage, at time of attachment, was still in effect and recorded, and both parties alleged same amount as value of property, court had duty to direct verdict for plaintiff for possession of property, describing it, and to render judgment accordingly.

**Sheriffs and Constables—Mortgage, Whose Consideration was Irrelevant to Issues, Held not to Affect Result of Action by Chattel Mortgagee for Attachment of Mortgaged Property.**

10. In action by chattel mortgagee for attachment of mortgaged property, consideration of another mortgage, recorded in county other than that in which chattels in question were originally located, was entirely irrelevant, and should not affect result.

---

Attachment, 6 **C. J.**, p. 30, n. 10, p. 289, n. 43.
Chattel Mortgages, 11 **C. J.**, p. 526, n. 13, p. 647, n. 20, p. 684, n. 93, 95.
Replevin, 34 **Cyc.**, p. 1475, n. 42, p. 1480, n. 8, p. 1520, n. 66.

From Malheur: DALTON BIGGS, Judge.

REVERSED.

In Banc.

For appellant there was a brief over the names of *Mr. Wells W. Wood* and *Mr. J. W. McCulloch.*

For respondents there was a brief over the names of *Mr. John W. Biggs, Mr. M. A. Biggs* and *Mr. C. H. Leonard.*

BURNETT, J.—The plaintiff corporation avers in substance that on June 17, 1920, Charles R. Peterson, duly made, executed and delivered to the Ontario Live Stock Loan Company his promissory notes of that date aggregating the sum of $65,835; that at the same time, for the purpose of securing the payment of the notes,

made, executed and delivered to the payee named therein his certain written mortgage whereby, with other personal property, he mortgaged to said payee 300 head of horses owned by him, and acknowledged the same in such manner as to entitle the same to be recorded; and that on the twenty-third day of the same month the said chattel mortgage was duly recorded in volume "V," page 139, of the chattel mortgage records for Malheur County, Oregon.

The plaintiff alleged in substance that on the same day immediately after their execution, the chattel mortgage, together with notes secured thereby, were duly sold, assigned, transferred and delivered by the payee therein named to the plaintiff, who is now the legal owner and holder thereof.

The conditions of the chattel mortgage are stated in the complaint, to the effect that after default in the payment of the principal or interest of the notes when the same became due, or if the mortgagor should suffer or permit any of the property to be taken on attachment or if the mortgagee should at any time deem itself to be unsafe or insecure in reference to said mortgage debt, then the same should become due and collectible, in which case the mortgagee should have the right immediately to take possession of all of the mortgaged property and sell the same at public or private sale without notice, and apply the proceeds of said sale to the payment of said mortgage debt, together with costs and expenses of the foreclosure.

The default of the maker in payment of the note and interest, and by suffering the mortgaged property to be taken on attachment, is stated, together with the plaintiff's election to declare the mortgage debt due and to foreclose the same.

It is further averred that on April 1, 1924, in Malheur County, Oregon, the plaintiff was and is now the owner of a special property in the mortgaged chattels and entitled to the immediate and exclusive possession of the same under the chattel mortgage for the purpose of foreclosing said mortgage, describing the chattels in detail and affixing a value thereto in the sum of $2,000.

It is further said that in April, 1924, in Malheur County, Oregon, without the plaintiff's consent and against its wishes, the defendant wrongfully and unlawfully took possession of a described portion of said mortgaged property, still retains possession of the same in Malheur County, Oregon, and refuses to deliver possession of the same to the plaintiff, all to its damage in the sum of $2,000, as the value of said property, and $500 for the wrongful detention thereof, and finally, that at Vale, in Malheur County, Oregon, prior to the commencement of this action, the plaintiff demanded from the defendant the immediate possession of the mortgaged property but the defendant refused and still refuses to deliver the same or any part thereof to the plaintiff. Demand is made by the plaintiff for judgment against the defendant for the recovery of the immediate possession of said personal property or for the sum of $2,000, the value thereof in event the delivery thereof cannot be had, and for $500 damages for the wrongful detention thereof, together with the costs and disbursements of this action.

The whole complaint is denied except that the defendant is the sheriff of Malheur County. For an affirmative defense the answer goes on to say that the defendant was sheriff as stated, and then makes the following averments:

"That on or about the first day of April, 1924, The Vale Trading Company, a corporation, filed its complaint with the Clerk of the Circuit Court for Harney County, Oregon, against the said Charles R. Peterson.

"That on the said date the said Vale Trading Company filed its affidavit and bond for attachment and caused to be issued thereon by the Clerk of Harney County, Oregon, a writ of attachment, which was duly issued and directed to the Sheriff of Malheur County, Oregon.

"That the said H. Lee Noe, as sheriff of Malheur County, Oregon, under and by virtue of said writ of attachment in said action did attach the following described personal property in Malheur County, Oregon; 39 head of live stock consisting of 34 head of horses and mares and 5 head of mules, all of the said property then and there being the personal property of Charles R. Peterson, the defendant in said action;

"That all of said property was free from all mortgages, liens, claims or encumbrances of any nature whatsoever to the Ontario Live Stock Loan Company, the Bankers' Discount Corporation or any other person whomsoever;

"That the said Vale Trading Company recovered judgment against the said Charles R. Peterson and an order of sale of the attached property, but that said property was wrongfully replevined and taken by the plaintiff herein, who wrongfully and unlawfully retains and withholds the same."

Similar allegations are made concerning an action by C. A. Fitchett against Charles R. Peterson, filed with the Clerk of the Circuit Court for Harney County, Oregon, and resulting in the attachment of 49 horses and 9 mules. It is also said in the answer:

"That all of the personal property hereinabove attached in both of the said actions is the identical personal property which the said plaintiff wrongfully and unlawfully took from the defendant herein in Malheur County, Oregon;

"That defendant is entitled to the immediate return of the said property to his possession in Malheur County, Oregon."

Like the complaint, the answer avers the property to be of the reasonable value of $2,000. Aside from admitting the official character of the defendant, the reply denies all the new matter in the answer. It appears without dispute in the record that the plaintiff gave an undertaking and had a writ issued for the return of the property to it, which was accomplished, so that at the time of the hearing it was in the possession of the plaintiff. The result of a jury trial was a verdict and judgment for the defendant entitling him to a return of the property, and the plaintiff appeals.

1. One of the contentions for the plaintiff is that the defendant's affirmative answer does not state facts sufficient to constitute a defense. As said by Mr. Justice MOORE in *Metropolitan Investment & Improvement Co.* v. *Schouweiler*, 83 Or. 695 (163 Pac. 599, 164 Pac. 370):

"It was incumbent upon the defendants, in order to substantiate their superior right to the real property attached, to allege and prove every step leading up to the filing of the certificate of attachment; but they having failed in the particular mentioned, we adhere to our former opinion."

The principle is the same where the attachment of personalty is involved.

2. Considering the new matter in the answer, we note that it is said

"That on or about the first day of April, 1924, the Vale Trading Company filed its complaint with the Clerk of the Circuit Court for Harney County, Oregon, against the said Charles R. Peterson."

That is sufficient for an allegation of the beginning of an action.  As said in Section 51, Or. L.:

"Actions at law shall be commenced by filing a complaint with the clerk of the court, * * .  At any time after the action is commenced the plaintiff may cause a summons to be served on the defendant."

According to Section 295, Or. L., as amended by the act of February 14, 1921, an attachment can only issue at the time of issuing the summons or at any time afterwards, and moreover it can be issued only in an action upon a contract of some kind as de-described in that section.  Besides all this, a writ of attachment shall issue only upon the filing of an affidavit setting forth certain particulars described in Section 296, Or. L., as amended by the act of February 14, 1921.  There is no allegation in the new matter of the answer that any summons was ever issued and for all that appears concerning the nature of the action by the Vale Trading Company, or by Fitchett, the actions may have been for slander or libel or for damages for some other tort.  Because of the omission to state anything either as to the kind of action or nature of the affidavit or bond filed there is an utter failure of justification under the writ of attachment which the defendant may have had in his hands and by virtue of which he professes to have acted.

3. Attachment traces its origin only to the custom of London and is not a common-law remedy and hence is subject to the rule that, in proceedings not in accordance with the course of the common law, a strict compliance with the statute authorizing the same must be pleaded and proven.  On this account

the affirmative defense of the defendant must be disregarded.

4. Moreover, in face of the undisputed record of the plaintiff's unsatisfied Malheur County chattel mortgage, antedating the alleged attachment, all the defendant could take under the writ, or sell under the ensuing judgment, would be subject to that mortgage. *Caveat emptor* would affect the defendant and those for whom he was acting. No matter who took or bought the property in Malheur County, he would have to surrender it to the plaintiff on demand under Section 10183, Or. L., whenever the latter elected to take possession for the purpose of foreclosing. The attachment did not divest the prior lien of the mortgage.

5. The plaintiff claims only under a chattel mortgage of date June 17, 1920. From a certified copy of this mortgage introduced in evidence without objection it appears that the same was recorded on June 23, 1920, in Malheur County, Oregon, and is not satisfied of record. After requiring a mortgage, deed of trust, conveyance or other instrument of writing intended to operate as a mortgage of personal property to be executed, witnessed and acknowledged, the statute provides:

"that any such mortgage, deed of trust, conveyance or instrument of writing intended to operate as a mortgage of personal property * * may be recorded in the office of the recorder of conveyances in counties in which such office is or may be established by law (and in other counties in the office of the county clerk) of the county where the mortgaged property is situated, and of such other county or counties as the mortgagee may elect, in a book of record kept exclusively for that purpose." Sections 10177 and 10178, Or. L.

Being of record in Malheur County, and unsatisfied, the Malheur mortgage would hold the chattels included in that mortgage and situated in that county although not recorded in any other county: *Zorn* v. *Livesley*, 44 Or. 501 (75 Pac. 1057).

6. At the trial, the court permitted the introduction of a chattel mortgage given by Peterson to the plaintiff on property in Harney County, but which had not been recorded in Malheur County, where the mortgage of June 17, 1920, was still of record, unsatisfied. The substance of the contention of the defendant is that the chattel mortgage in Harney County superseded the Malheur County mortgage and included the same and additional debts from Peterson to the plaintiff, and not having been recorded in Malheur County could not affect property there. True enough, the Harney County mortgage, not being recorded in Malheur County, could not affect chattels in the latter county; but this is not all. The record evidence introduced shows as a matter of law that the mortgage under which the plaintiff claims was of record and yet unsatisfied. If the defendant would destroy the effect of that, he should have pleaded and proved that the debt for which the Malheur County mortgage was given had been paid, resulting in the satisfaction of that mortgage, but no such defense is pleaded and there was no proof of the same. As said by Mr. Justice McCOURT in *Hoy* v. *Biladeau*, 110 Or. 591, 597 (223 Pac. 241),—

"It is a firmly established rule that a mortgage given as security for a debt is not discharged by a change in the form of the indebtedness, and that nothing short of actual payment of the debt or an express release of the mortgage will operate to discharge the same.

"It is also well settled that the renewal of a note secured by mortgage, and the inclusion in such renewal note of accrued interest, together with additional indebtedness, does not discharge the lien of the mortgage as security for the original debt, in the absence of an intention or agreement of the parties to effect that result"; citing authorities.

7. It was quite competent for the plaintiff to retain its chattel mortgage upon property in Malheur County and the mortgage introduced in evidence was sufficient to establish the lien on the property named therein and situated in that county. It was also permissible for it to take additional security for the same and additional debts upon other property in Harney County. A record of the Malheur County mortgage in Harney County would not affect any additional property situated in the latter county. It would only apply to that described in the mortgage itself and which was at the beginning situated in Malheur County.

8. The plaintiff claims general damages, but no evidence appears in the bill of exceptions sustaining any such claim. According to that instrument a witness for the plaintiff, over the defendant's objection, testified to the effect that he made a special trip from Wheeler County in his car and was in Malheur County for about a week, at a cost of $15 to $18 per day; that he was out something over $6 for telephone and telegraph bills about the matter pertaining to this action and that he had to give a redelivery bond and paid a premium for it but did not know the amount thereof. So far as the expenses of the trip are concerned and other expenses mentioned, if recoverable at all as damages they would be special damages, which must

be pleaded if the plaintiff would recover them. There is no such pleading to support the claim.

9, 10. On the record evidence submitted, and in the absence of any averment or proof that the mortgage debt was paid, it was the duty of the court to direct a verdict for the plaintiff that it is entitled to the possession of the property, describing the same, being of the value of $2,000, as alleged by both parties, and to render judgment accordingly. The consideration of the Harney County mortgage, recorded, as appears, in that county only, was entirely irrelevant to the issue in this case and should not affect the result.

The judgment is reversed with directions to the Circuit Court to enter judgment for the plaintiff that it is the owner of and entitled to the immediate possession of the property described in the complaint, with judgment for $2,000, its value, if delivery of the property to the plaintiff cannot be made, and for its costs and disbursements in this court and in the Circuit Court.          REVERSED WITH DIRECTIONS.

BEAN and COSHOW, JJ., concur in the result.